UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Sara Batton, *as administrator*
*of the estate of Tyler Witbeck*,                  Case No. 3:21-cv-1771

        Plaintiff,

   v.                                         MEMORANDUM OPINION
                                                AND ORDER

Sandusky County, Ohio, *et al.*,

        Defendants.

## I. INTRODUCTION

On September 13, 2021, Plaintiff Sara Batton, as administrator of the estate of Tyler Witbeck, filed a complaint alleging four claims for relief related to the arrest, detention, and death of Tyler Witbeck. (Doc. No. 1). Batton sued numerous Sandusky County entities and employees, as well as the City of Clyde ("City") and Clyde police officer Aaron Hossler ("Hossler") (collectively, "Clyde Defendants"). (*Id.*). On March 25, 2022, the Clyde Defendants moved for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Doc. No. 44). Plaintiff opposed the motion, (Doc. No. 47), and the Clyde Defendants filed a reply. (Doc. No. 48).

## II. BACKGROUND

This case involves the tragic suicide of Mr. Witbeck while in custody at the Sandusky County Jail. In general, Plaintiff alleged all Defendants were deliberately indifferent to the mental health and suicide risk presented by Mr. Witbeck. (*See* Doc. No. 1). As the pending motion only addresses the liability of the Clyde Defendants, I will restrict the below summary to those facts relevant to determining the Clyde Defendants' entitlement to dismissal.

On September 26, 2019, Mr. Witbeck called the Clyde Police Department to open his vehicle after locking his keys in his car. (Doc. No. 1 at 16). Officer Hossler responded to the call and opened the vehicle. (*Id.*). But it was also determined Mr. Witbeck was the subject of an arrest warrant from Cuyahoga County, Ohio, so Hossler arrested him. (*Id.*). During the arrest, Hossler found prescriptions for Seroquel and Depakote. (*Id.*). Hossler placed the Depakote prescription back with Mr. Witbeck for later use. (*Id.*). During Mr. Witbeck's transport to the Jail,[1] he was crying and made multiple comments, such as "I'm done" and "F- my life." (*Id.*). Hossler was present at Mr. Witbeck's intake assessment at the Jail but he allegedly failed to inform the Jail of Mr. Witbeck's medications. (*Id.* at 17, 19).

Plaintiff alleged Clyde's policies and training of Hossler regarding Mr. Witbeck's serious medical needs were not constitutionally adequate. (*Id.* at 17). And as such, both the City and Hossler acted with deliberate indifference to Mr. Witbeck's serious medical needs. (*Id.*).[2]

At the Jail, Mr. Witbeck's medications "were apparently brought to the Jail with Mr. Witbeck" but were not listed in his property. (*Id.* at 18). Mr. Witbeck then underwent an intake assessment with two Jail employees where it was noted he took daily psychiatric medications. (*Id.* at 17). Mr. Witbeck also had direct contact with two nurses at the Jail who allegedly failed to properly assess and treat Mr. Witbeck, including by ensuring he has access to his medications and psychiatric care. (*Id.* at 18). After being placed in a cell, numerous Jail guards allegedly left Mr. Witbeck unattended for several hours and failed to regularly check on him. (*Id.* at 19). Unfortunately, Mr. Witbeck was found hanging in his cell on September 26, 2019, and was pronounced dead shortly afterwards. (*Id.* at 23). Plaintiff alleged all Defendants demonstrated a deliberate indifference to Mr.

---

[1] The Jail is owned and operated by Sandusky County. (Doc. No. 1 at 5-6).
[2] This is the extent of specifically pleaded allegations against the Clyde Defendants; the remainder of the complaint makes allegations against "all Defendants." (*See* Doc. No. 1).

Witbeck's serious medical needs and all Defendants failed to train or had a policy or custom of failing to train, on constitutionally adequate medical care. (*Id.* at 19-23).

### III. STANDARD

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) generally follows the same rules as a motion to dismiss the complaint under Rule 12(b)(6). *Bates v. Green Farms Condo. Ass'n*, 958 F. 3d 470, 480 (6th Cir. 2020). "Courts must accept as true all well-pleaded factual allegations, but they need not accept legal conclusions." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). These allegations must "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "Plausibility is a context-specific inquiry, and the allegations in the complaint must permit the court to infer more than the mere possibility of misconduct[.]" *Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365 (6th Cir. 2011). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557). Dismissal is warranted if the complaint lacks an allegation as to a necessary element of the claim raised. *See Craighead v. E.F. Hutton & Co.*, 899 F.2d 485, 494-95 (6th Cir. 1990).

### IV. ANALYSIS

A. Hossler

    1. **First Count - § 1983 claim for failure to supervise or train on the provision of adequate medical care in violation of 8th and 14th Amendments**

Plaintiff's first claim for relief under 42 U.S.C. § 1983 asserts liability against all Defendants in their individual capacity for a failure to supervise, train, and take corrective measures. (Doc. No. 1 at 23). "A failure to train, screen or supervise is a mechanism for plaintiffs to establish liability on the part of a municipal employer." *Lipian v. Univ. of Mich.*, 453 F. Supp. 3d 937, 963 (E.D. Mich. 2020) (citing *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006) (further citation omitted)). Plaintiff concedes her first count is not directed at Hossler, but only his

3

employer, the City. (Doc. No. 47 at 6 & 9). Thus, Hossler is entitled to judgment on the pleadings for the First Count.

### 2. Second Count - *Monell* claim of custom, policy, or practice of failing to train on the provision of adequate medical care in violation of 8th and 14th Amendments

Plaintiff's second claim for relief asserts liability under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), against all Defendants in their official and individual capacities. (Doc. No. 1 at 30). Yet, *Monell* claims impose liability on municipalities, not individuals. *Phillips v. City of Cincinnati*, No. 1:18-cv-541, 2019 WL 2289277, at *6 (S.D. Ohio May 29, 2019). Moreover, claims against individuals in their official capacities, "are properly construed as [claims] against the City." *Id.* Plaintiff concedes the second claim for relief was not directed at Hossler. (Doc. No. 47 at 6). Therefore, and to the extent made, Plaintiff's *Monell* claim cannot stand and Hossler is entitled to judgment on the pleadings at Plaintiff's Second Count. *See Moderwell v. Cuyahoga Cnty.*, No. 1:19CV613, 2020 WL 4726458, at *2-3 (N.D. Ohio Aug. 14, 2020).

### 3. Third Count – § 1983 claim for failure to provide adequate medical care in violation of the 8th and 14th Amendments

Preliminarily, the 8th Amendment protects prisoners and ensures they receive adequate medical care while in custody. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Due Process Clause of the 14th Amendment extends these same protections to pre-trial detainees. *Moderwell*, 2020 WL 4726456, at *2 (citing *Thompson v. Cnty. of Medina, Ohio*, 29 F.3d 238, 242 (6th Cir. 1994)). And although analyzed largely the same legally, the proper avenue for relief is under the 14th Amendment and not the 8th Amendment. *Moderwell*, 2020 WL 4726456, at *2; *see also Colson v. City of Alcoa, Tenn.*, 37 F.4th 1182, 1187-89 (6th Cir. 2022) (discussing basis for applying 14th Amendment jurisprudence for claims of lack of medical care while in police custody).

"A cause of action under § 1983 for failure to provide adequate medical treatment requires a showing that 'the defendants acted with deliberate indifference to the serious medical needs' of the

4

pre-trial detainee." *Estate of Cater v. City of Detroit*, 408 F.3d 305, 311 (6th Cir. 2005) (quoting *Watkins v. City of Battle Creek,* 273 F.3d 682, 686 (6th Cir. 2001) (further citation and quotation marks omitted)). In a case of suicide, "the proper inquiry . . . is [] whether the decedent showed a strong likelihood that he would attempt to take his own life in such a manner that failure to take adequate precautions amounted to deliberate indifference to the decedent's serious medical needs." *Barber v. City of Salem*, 953 F.2d 232, 239-40 (6th Cir. 1992).

Deliberate indifference has both an objective and subjective component. *Troutman v. Louisville Metro Dept. of Corr.*, 979 F.3d 472, 482 (6th Cir. 2020). "A plaintiff meets the objective prong of the [ ] analysis by showing that the inmate showed suicidal tendencies during the period of detention or that he posed a strong likelihood of another suicide attempt."[3] *Id.* at 482-83 (citations and internal quotations omitted). The subjective standard requires that it was "obvious that there was a 'strong likelihood' that a[] [detainee] would attempt suicide." *Downard for Estate of Downard v. Martin*, 968 F.3d 594, 600 (6th Cir. 2020). Demonstrating a "strong likelihood" is a "'high bar' and typically requires evidence that the [detainee] was already on suicide watch, previously attempted suicide under similar conditions, or recently expressed a desire to self-harm." *Troutman*, 979 F.3d at 483 (citing *Downard*, 968 F.3d at 601).

Importantly, "deliberate indifference to some *possibility* of suicide or even a *likelihood* of suicide" is insufficient. *Galloway v. Anuszkiewicz*, 518 F. App'x 330, 336 (6th Cir. 2013) (emphasis in original). This is because mere negligence is insufficient; instead, plaintiff must show defendant acted "deliberately (not accidentally), [and] also recklessly in the face of an unjustifiably high risk of

---

[3] "In the prisoner-suicide context, we recognize that proof of a prisoner's psychological needs manifesting themselves in suicidal tendencies with 'a strong likelihood that he would attempt to take his own life' are sufficiently serious for the purposes of the objective component." *Mantell v. Health Prof'l Ltd.,* 612 F. App'x 302, 305 (6th Cir. 2015) (quoting *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005)). For purposes of this ruling only, I will assume without deciding Mr. Witbeck's condition was sufficiently serious to satisfy the objective component.

5

harm that is either known or so obvious that it should be known." *Greene v. Crawford Cnty., Mich.*, 22 F.4th 593, 606 (6th Cir. 2022) (quoting *Brawner v. Scott Cnty., Tenn.*, 14 F.4th 585, 597 (6th Cir. 2021)).[4] Pretrial detainees must allege "'more than negligence but less than subjective intent – something akin to reckless disregard.'" *Brawner*, 14 F.4th at 597 (quoting *Castro v. Cnty. of Los Angelos*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc)).

Plaintiff argues Hossler should have known Mr. Witbeck was suicidal and his failure to inform the Jail of Mr. Witbeck's suicide risk was deliberate indifference. (Doc. No. 47 at 9). In support, Plaintiff cites to Mr. Witbeck's conduct while in custody, coupled with the discovery of the medications, as evidence of his suicidal state. (*Id.* at 9-10). While in custody, Mr. Witbeck is alleged to have been crying and to have stated: "I'm done," "F- my life," and "I don't know how I feel right now." (*Id.*; *see also* Doc. No. 1 at 16). Even at this juncture, these allegations represent a close call with regard to whether a plausible constitutional violation has been alleged.

While the statements cited by Plaintiff do not threaten suicide, they are troubling and veer closer to suggesting a suicide risk than the simple expressions of unhappiness that have been found to be insufficient in other cases. *See Barber*, 953 F.2d at 240 (expressing concern over job, engagement, and custody was a normal response to arrest and did not alert authorities of strong likelihood of suicide). *See also Parker v. Ottawa Cnty.*, No. 3:19-cv-665, 2022 WL 875245, at *4 (N.D.

---

[4] *Brawner* raised a failure to provide medical care claim under the deliberate indifference standard. It held that a modification to the subjective showing was necessary for consideration of pre-trial detainees' claims of deliberate indifference but did not set out a new standard. *See Brawner*, 14 F.4th at 591-97. In an attempt to clarify the *Brawner* holding, the Sixth Circuit stated, "the post-*Brawner* deliberate indifference inquiry still requires consideration of an official's actual knowledge of the relevant circumstances." *Trozzi v. Lake Cnty., Ohio*, 29 F.4th 745, 755 (6th Cir. 2022). *Trozzi* went on to hold that an inadequate medical care claim under the 14th Amendment required: (1) an objectively serious medical condition; (2) a reasonable officer (knowing what the officer knew at the time of the incident) would have understood that the detainee's medical needs posed an excessive risk of harm; and (3) the officer knew his failure to respond would pose a serious risk of harm and then ignored that risk. *Id.* at 757-58. This modified standard added the "reasonable officer" into consideration. The guidance from *Trozzi* had not been published when Clyde initially briefed the motion and both sides failed to address the issue of this modified standard in its further briefing.

Ohio March 24, 2022) ("Normal unhappiness does not establish a strong likelihood to commit suicide."); *Criswell v. Wayne Cnty., Ky.*, 165 F.3d 26, 1998 WL 598739, at *4 (6th Cir. 1998) (unpublished table decision) (same). Accepting these allegations as true, they are enough to plausibly support a claim that Hossler was in possession of sufficient facts from which he did or should have inferred Mr. Witbeck's suicidal state.

Furthermore, the complaint also leaves open a question as to Hossler's actions regarding custody or delivery of the prescription medications and his attendance at the intake assessment at the Jail. (Doc. No. 1 at 16-18). Thus, Plaintiff has identified factual issues upon which her claim for deliberate indifference by Hossler may turn. At this stage of the litigation, she is entitled to investigate further as to what Hossler did with the medications and what he expressed to the Jail employees at the intake assessment.

Taking the allegations in the complaint as true, they plausibly establish a claim for deliberate indifference to Mr. Witbeck's suicide risk by Hossler. Therefore, I deny Hossler's motion for judgment on the pleadings as to the Third Count.

### 4. Qualified Immunity

Recently, the Sixth Circuit clarified a district court errs by failing to meaningfully review a request for qualified immunity on a motion for judgment on the pleadings. *Myers v. City of Centerville, et al.*, 41 F.4th 746, 758-59 (6th Cir. July 21, 2022). District courts have "'a duty to address' qualified immunity when it is 'properly raised prior to discovery.'" *Id.* at 758 (quoting *Summers v. Leis*, 368 F.3d 881, 886 (6th Cir. 2004)). At this stage, the court must determine "whether the complaint alleged the violation of a constitutional right at all, and if so, whether that right was clearly established." *Skousen v. Brighton High Sch.*, 305 F.3d 520, 527 (6th Cir. 2002).

The general preference to defer rulings on qualified immunity until further facts have been developed only applies to the second prong – clearly established – but "does not at all cover

7

qualified immunity's *first* prong – whether the complaint plausibly alleged a constitutional violation." *Myers*, 41 F.4th at 759 (emphasis in original). "Put differently, if the complaint fails to allege facts plausibly showing the violation of a constitutional right (regardless of whether that right was clearly established), granting qualified immunity is appropriate on the pleadings." *Id.*

As I have already found the complaint plausibly alleges a constitutional violation against Hossler at the Third Count, I will defer my ruling on qualified immunity until further facts have been developed.

### B. City of Clyde

The complaint asserts three claims for relief against the City, all stemming from the alleged constitutional violation of failure to provide adequate medical care. (*See* Doc. No. 1 at 23-34). But a municipality may not be held liable simply because it employs a tortfeasor; instead, it must be a government policy or custom that inflicts injury such that the municipal entity itself is responsible under § 1983. *See Monell*, 436 U.S. at 689-94. An additional theory of *Monell* liability is based on the municipality's failure to adequately train or supervise its employees. *Shadrick v. Hopkins Cnty.*, 805 F.3d 724, 738 (6th Cir. 2015). To establish municipal liability, the policy or custom must be the moving force behind the constitutional violation. *Monell,* 436 U.S. at 690.

Plaintiff's complaint is almost entirely pled in generalities, asserting "all Defendants" are responsible for the violations and injuries incurred. (*See* Doc. No. 1; *see also* Doc. No. 47 at 18). Such generalized pleading is typically insufficient for a § 1983 claim where it must be shown that "a defendant was *personally* at fault and that the defendant's culpable conduct (not somebody else's) *caused* the injury." *Pineda v. Hamilton Cnty., Ohio*, 977 F.3d 483, 490 (6th Cir. 2020) (emphasis in original); *see also Iqbal*, 556 U.S. at 676 (2009) ("Collective failures of responsibility are not actionable under § 1983[.]"). The City is specifically mentioned in only four allegations, which are relevantly recited below:

8

- ¶ 24 – Defendant Clyde was/is the employer and principal of [Hossler] and responsible for the policies, practices, and customs of [Hossler]. Defendant Clyde arrested and/or detained decedent on September 26, 2019 and took him to the Sandusky County Jail [ ] where decedent was an inmate on September 26, 2019.

- ¶ 25 – [Hossler] was and is a police officer employed by the City of Clyde.

- ¶ 43 – On or about September 26, 2019 Decedent . . . called the City of Clyde Police Department to assist him in opening his vehicle … The City of Clyde, however, determined Decedent had a warrant and arrested Decedent and took him to the Sandusky County Jail.

- ¶ 47 – The City of Clyde's policies, procedures, and training for police officers such as Hossler were not adequate and constitutionally deficient when it came to the serious medical needs of Decedent. They knew this but acted with deliberate indifference.

(*See* Doc. No. 1 at 11, 16-17).

### 1. First Count – § 1983 claim for failure to train on the provision of adequate medical care

Failure to train claims can arise either where the entity "fail[s] to provide adequate training in light of foreseeable consequences . . ." or "fails to act in response to repeated complaints of constitutional violations by its officers." *Brown v. Shaner*, 172 F.3d 927, 931 (6th Cir. 1999). In either instance, a plaintiff must show "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

"[D]eliberate indifference is established when 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need.'"

9

*Miller v. City of Shaker Heights,* 438 F. Supp. 3d 829, 837 (N.D. Ohio 2020) (quoting *City of Canton v. Harris*, 489 U.S. 378, 388-89 (1989)); *see also Oklo v. Metro. Gov't of Nashville*, 892 F. Supp. 2d 931, 944 (M.D. Tenn. 2012) ("Deliberate indifference requires more than a negligent series of oversights; the risk of a constitutional violation must be plainly obvious and yet disregarded.") (internal citation and quotation marks omitted).

Plaintiff's complaint fails to allege facts to plausibly suggest that she can meet the elements of her failure to train claim. The complaint is almost devoid of substantive factual allegations against the City as opposed to generalized allegations against "all Defendants." *See Bell Atl. Corp.*, 550 U.S. at 555 (proper pleadings under Rule 8 "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."). Liability under § 1983 "cannot be founded upon conclusory, vague or general allegations," but instead must show a "constitutional rights violation recited in the complaint and what *each* defendant did to violate that asserted right." *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 842 (6th Cir. 2002) (citation omitted) (emphasis in original); *see also Hanner v. City of Dearborn Heights*, 450 F. App'x 440, 447 (6th Cir. 2011) (affirming dismissal of § 1983 deliberate indifference to serious medical need claim against municipality where complaint failed to identify a municipal policy or custom in support of the claim). Because of this it is essential to delineate what training the City did or did not provide to Hossler, but the allegations fail to do so. (*See* Doc. No. 1 at 16, 23; *see also* Doc. No. 47 at 18)

A further deficiency lies in the complaint's lack of allegations regarding the second element. Deliberate indifference can be inferred from prior instances, but the complaint lacks any allegations to demonstrate the City ""ignored a 'clear and persistent pattern of misconduct'" by its employees. *Osberry v. Slusher*, 750 F. App'x 385, 397 (6th Cir. 2018) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016)); *see also D'Ambrosio v. Marino*, 747 F.3d 378, 388 (6th Cir. 2014) (recognizing

10

three prior instances could not establish notice of habitually unconstitutional conduct to support a failure to train claim).

Deliberate indifference can also be inferred from a single violation coupled with "a showing that the [municipality] had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Harvey v. Campbell Cnty., Tenn.*, 453 F. App'x 557, 562-63 (6th Cir. 2011) (internal citations omitted). This requires "a complete failure to train the police force, training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Id.* at 567. Such an inference is not supported by the complaint's allegations about the Clyde Defendants.

Lastly, any violation by the City must be "closely related to or actually cause[ ] the injury." *Ellis,* 455 F.3d at 700. But by the time Mr. Witbeck committed suicide, he was not in the custody of the City; he was in the custody of the Sandusky County Jail. (*See* Doc. No. 1 at 4-5). The Jail's intake assessment noted Mr. Witbeck's need for psychiatric medications, and Mr. Witbeck was also alleged to have had contact with several Jail employees, including two nurses, in the interim. (*See* Doc. No. 1 at 17-22). It is further alleged Mr. Witbeck had been "left [ ] alone and isolated for hours" in his cell. (Doc. No. 1 at 19). Allegations asserting the intervening acts or failures by employees of a separate government entity weaken the plausibility of any closely related causal connection between the City's failure to train Hossler and Mr. Witbeck's death.

Accordingly, because the complaint lacks sufficient allegations to plausibly infer the essential elements of a claim against the City for failure to train, I grant the City's motion for judgment on the pleadings as to the First Count. *See Estate of Abbey v. Herring*, No. 20-cv-12798, 2022 WL 1095044, at *12-13 (E.D. Mich. April 12, 2022) (granting motion to dismiss for failure to properly allege *Monell* claims) (awaiting publication).

### 2. Second Count - *Monell* claim of custom, policy, or practice of failing to train regarding the provision of reasonably adequate medical care

Similarly, the complaint lacks sufficient allegations against the City to plausibly assert a *Monell* claim for a custom or policy of failing to train. The plaintiff must show: (1) the existence of a policy, (2) connect that policy to the municipality, and (3) demonstrate that his injury was caused by the execution of that policy. *North*, 754 F. App'x at 391 (citing *Garner v. Memphis Police Dep't,* 8 F.3d 358, 364 (6th Cir. 1993)).

The Plaintiff fails to identify the custom or policy of the City that is at issue. The broad assertion that the City's policies "were not adequate and constitutionally deficient," (Doc. No. 1 at 17; *see also* Doc. No. 47 at 18), "is nothing more than a bare recitation of legal standards." *Osberry*, 750 F. App'x at 398; *see also D'Ambrosio*, 747 F.3d at 383 (conclusory legal allegations "masquerading as factual allegations" are insufficient to plead a claim) (quoting *Terry v. Tyson Farms, Inc.*, 604 F.3d 272, 275-76 (6th Cir. 2010)).

Nor does the complaint allege sufficient facts to state a plausible causal connection between any alleged policy or custom of the City and the injury suffered by Mr. Witbeck. As noted above, when he committed suicide, Mr. Witbeck was not in the custody of the City, but had been "left [ ] alone and isolated for hours" in his cell at the Jail. (Doc. No. 1 at 19). Further, the Jail was on notice of Mr. Witbeck's medication needs and had several employees interact with Mr. Witbeck prior to his tragic suicide. The existence of these facts belies direct causation. *See MacLean-Patterson v. Erie Cnty., Ohio*, 488 F. Supp. 3d 581, 589 (N.D. Ohio 2020) ("There must be 'a direct causal link between the custom and the constitutional deprivation; that is, [Plaintiff] must show that the particular injury was incurred because of the execution of that policy.'") (quoting *Doe v. Claiborne Cnty.*, 103 F.3d 495, 508 (6th Cir. 1998)).

12

Accordingly, I find the complaint lacks adequate allegations to infer a plausible claim for *Monell* liability against the City and I grant the motion for judgment on the pleadings as to the Second Count.

### 3. Third Count – § 1983 claim for failure to provide adequate medical care in violation of the 8th and 14th Amendments

The Third Count asserts liability against all Defendants for failure to provide adequate medical care. (Doc. No. 1 at 32). A municipality is only liable under § 1983 based upon certain theories. *See, e.g., Monell*, 436 U.S. at 690-91 (municipality cannot be liable absent an official policy or custom that resulted in the deprivation of a constitutional right); *Collins v. City of Harker Heights*, 503 U.S. 115, 120-22 (1992) (plaintiff cannot base claims against a municipality on wrongful actions of an employee, rather, one must show the municipality itself is the wrongdoer). Those theories have already been analyzed at the First and Second Counts. As this Count is duplicative as to the City's liability, I grant the City's motion for judgment on the pleadings as to the Third Count.

### C. Fourth Count – Medical Malpractice

Plaintiff's fourth claim for relief does not allege liability for medical malpractice against either Hossler or the City, (*see* Doc. No. 1 at 35); but even if it did, Plaintiff concedes she is not asserting a claim for medical malpractice against either Clyde Defendant. (*See* Doc. No. 47 at 19). Thus, the Clyde Defendants' request for judgment on the pleadings on the Fourth Count is moot. (Doc. No. 44 at 16-17).

### V. CONCLUSION

Based on the above, I grant Hossler's motion for judgment on the pleadings and dismiss the claims with respect to the First and Second Counts; but I also deny the motion with respect to the Third Count. (Doc. No. 44). Further, I grant the City of Clyde's motion for judgment on the pleadings as to all Counts and accordingly, dismiss the City of Clyde from this case. (Doc. No. 44).

13

So Ordered.

                                                s/ Jeffrey J. Helmick
                                                United States District Judge